UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TOREN HAINS,

        Petitioner,               Case No. 1:17-cv-778

v.                                       Honorable Paul L. Maloney

THOMAS MACKIE,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Toren Hains is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Michigan. Following a jury trial in the Kalamazoo County Circuit Court, a jury convicted Petitioner of first-degree child abuse, Mich. Comp. Laws § 750.136b(2), and felony murder, Mich. Comp. Laws § 750.316b. On June 2, 2014, the court sentenced Petitioner to respective prison terms of 10 to 30 years and life imprisonment.

On August 22, 2017, Petitioner filed his habeas corpus petition. The petition raises two grounds for relief, the same grounds for relief Petitioner raised in the Michigan appellate courts: (1) the evidence was insufficient to convict Petitioner of first-degree child abuse and therefore insufficient evidence of felony murder; and (2) Petitioner was denied a fair trial by the admission of expert testimony that invaded the province of the jury, and counsel was ineffective for failing to object to the testimony. (Pet., ECF No. 1-1, PageID.17.)

Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are procedurally defaulted or without merit. Upon review and

applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.   Factual allegations

According to Petitioner, on the evening of December 30, 2012, he was doing laundry and keeping an eye on his girlfriend's 14-month-old daughter. (Trial Tr. III, ECF No. 9-5, PageID.836-837.)  He picked her up and held her in his arms, but she arched back and fell, headfirst, about 3 or 4 feet onto a carpeted floor.  (*Id.*)  When Petitioner picked her up, she experienced what Petitioner described as a seizure.  (*Id.*, PageID.837-838.)  Shortly thereafter, the child was unresponsive.  (*Id.*)  Petitioner grabbed the child and ran to a neighbor's apartment.  (*Id.*, PageID.838-839.)  The neighbor called 911.  (*Id.*, PageID.839.)  Paramedics arrived, resuscitated the child, and then transported her to a hospital.  She died the next day.

Petitioner was the only witness to the event that led to the infant's injuries.  Three doctors provided expert testimony regarding the nature of the injuries.  Dr. Robert Beck was one of several treating physicians at the hospital.  (*Id.*, PageID.686-688.)  He testified that the infant was comatose and unresponsive and that she had bleeding inside of her skull around her brain.  (*Id.*, PageID.689-691.)  Dr. Beck indicated the subdural bleeding was an indicator of significant severe traumatic brain injury.  (*Id.*, PageID.691.)  Dr. Beck pointed to another indicator of severe, non-accidental injury: retinal hemorrhages.  (*Id.*, PageID.691-692.)

Dr. Beck testified that the injuries were not consistent with the events as described by defendant—a fall of 3 to 4 feet onto a carpeted surface.  (*Id.*, PageID.703.)  Dr. Beck explained that the type of injuries at issue here would typically be caused by a high-speed automobile crash.

(*Id.*, PageID.705.) Dr. Beck opined that the injury was caused by rapid significant acceleration/deceleration movements like shaking or rotation. (*Id.*)

Toxicologist Dr. George Behonick testified regarding testing of the infant's blood. Dr. Behonick reported that the infant had blood concentrations of a marijuana metabolite that were as high as one might expect to find in an impaired adult driver. (*Id.*, PageID.750.) Dr. Behonick also testified that the infant was legally drunk. (*Id.*, PageID.753.)

Forensic Pathologist Dr. John Bechinski testified regarding the autopsy he performed on the infant. Dr. Bechinski also likened the injuries suffered to those present in a high-speed motor vehicle collision. (*Id.*, PageID.788.) Dr. Bechinski testified that he did not find any injury on the top of the victim's head as one might expect to find if she fell as described by Petitioner. (*Id.*, PageID.792-793.) Dr. Bechinski concluded that the subdural bleeding and retinal hemorrhaging could have been caused by violent shaking of the infant or by slamming the child onto a soft object. (*Id.*, PageID.803-804.) Dr. Bechinski testified that it was unlikely the injuries were caused by the events as Petitioner had described them. (*Id.*, PageID.805-807.) Dr. Bechinski also reported that several of the infant's ribs had been previously fractured, but were in the process of healing at the time of the incident that resulted in her death. (*Id.*, PageID.808-809.)

The jury deliberated for a few hours before finding Petitioner guilty as charged with respect to the first-degree child abuse and felony murder counts. (Trial Tr. V, ECF No. 9-7, PageID.950.) Having found Petitioner guilty of felony murder, the jury found Petitioner not guilty of second-degree murder. (*Id.*) Petitioner was sentenced as described above. (Sentencing Hr'g, ECF No. 9-8.)

Petitioner, with the assistance of appointed counsel, appealed his convictions to the Michigan Court of Appeals raising the same two issues he raises here. (Pet'r's Br. on Appeal,

3

ECF No. 9-9, PageID.992-993.) By unpublished opinion issued November 24, 2015, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed the trial court. (Mich. Ct. App. Op., ECF No. 9-9, PageID.978-980.) Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court. (Pet'r's Appl. for Leave to Appeal, ECF No. 9-10, PageID.1047-1053.) That court denied leave by order entered May 24, 2016. (Mich. Order, ECF No. 9-10, PageID.1046.)

Fifteen months later, Petitioner filed his petition in this Court.

II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not

consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Sufficiency of the Evidence of First-Degree Child Abuse

Petitioner first contends that the prosecutor failed to present sufficient evidence to support his conviction for first-degree child abuse or, because that conviction provides the foundation for the felony murder conviction, felony murder. Petitioner's argument is based on the element of intent. He claims the prosecutor failed to show that Petitioner intended to cause the infant serious physical or mental harm or at least knew that his actions would cause serious physical or mental harm. (Pet'r's Br. on Appeal, ECF No. 9-9, PageID.1013-1014.)

The Michigan Court of Appeals rejected Petitioner's claim:

> Defendant first argues that there was insufficient evidence to support his convictions. We disagree. We review the sufficiency of the evidence de novo. *People v Harverson*, 291 Mich App 171, 175-177; 804 NW2d 757 (2010). In doing so, we view "the evidence in the light most favorable to the prosecution" and determine "whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt." *Id*. at 175. Defendant does not directly challenge his felony murder conviction, but rather seemingly relies on the argument that there is insufficient evidence for the underlying felony of first-degree child abuse.
>
> First-degree child abuse entails "knowingly or intentionally caus[ing] serious physical or serious mental harm to a child." MCL 750.136b(2). There is no serious dispute that the child suffered serious physical harm here; defendant only contends that there was insufficient evidence that he knowingly or intentionally caused that harm. In other words, defendant challenges whether "defendant intended to [commit the act], [and] also that, by doing so, defendant intended to cause serious physical harm or [he] knew that serious physical harm would be caused." *People v Maynor*, 470 Mich 289, 297; 683 NW2d 565 (2004). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).
>
> Defendant provided somewhat conflicting accounts of how the victim came to be injured, but they were all to the general effect that she fell, either from his arms or from a bed. Expert testimony, however, found the nature and extent of the victim's injuries inconsistent with a mere fall because they would have required substantial

6

> force; such injuries were more common in "high speed motor vehicle collisions." The mother testified that the victim frequently suffered scrapes or bruises after defendant had watched her, and the experts found evidence of healing fractures on the victim's ribs. Defendant made marijuana-laced brownies the night before the victim died and denied giving the victim any brownies or alcohol, but as noted, THC and alcohol were found in her body.
>
> The jury is generally entitled to believe what it likes, *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980), subject only to the limitation that a finding of guilt must be based on evidence actually admitted and that it must be rationally possible from that evidence to find the defendant guilty beyond a reasonable doubt. *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883); *People v Hampton*, 407 Mich 354, 366-368; 285 NW2d 284 (1979). Consequently, the jury is entitled to pick and choose what evidence to believe so long as its conclusion does not mandate the invention of evidence not admitted. Even without remarking on defendant's peculiar behavior during and after his attempts to solicit help for the victim, the discrepancy between his explanations and the evidence of how much force was needed to cause the victim's injuries would alone be enough for reasonable minds to conclude that defendant intentionally inflicted the harm upon the victim with full knowledge that serious harm would ensue. *Kanaan*, 278 Mich App at 622; Maynor, 470 Mich at 297. Therefore, viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for a rational trier of fact to find defendant guilty of first-degree child abuse.[1] *Harverson*, 291 Mich App at 175.
>
> ---
>
> [1] As discussed, defendant does not directly challenge his conviction for felony murder, but we note that the same evidence prompts a reasonable inference that defendant killed the victim and intended to do great bodily harm to the victim. Because first-degree child abuse is one of the specifically enumerated crimes in MCL 750.316(1)(b), there was sufficient evidence for a rational trier of fact to find defendant guilty of felony murder. *Harverson*, 291 Mich App at 175; *see also People v Carines*, 460 Mich 750, 759-761; 597 NW2d 130 (1999).

(Mich. Ct. App. Op., ECF No. 9-9, PageID.978-979.)

To prevail on his claim in this Court, Petitioner must show that the state appellate court's determination was contrary to, or an unreasonable application of, clearly established federal law. The "clearly established federal law" regarding sufficiency of the evidence is set forth by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 319 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh

the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Although the Michigan Court of Appeals relied upon state authority, the standard it applied was identical to the *Jackson* standard. Thus, it cannot be said that the appellate court's decision was contrary to the federal law clearly established in *Jackson*. Moreover, the court of appeals' application of the standard was reasonable.

Essentially, Petitioner objects because there was no direct evidence of his intent—it was all circumstantial based upon the nature of the infant's injuries. The proofs here were wholly circumstantial. But, "'circumstantial evidence is entitled to the same weight as direct evidence.'"

8

*Bechtol v. Prelesnik*, 568 F. App'x 441, 450 (6th Cir. 2014) (quoting *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993)); *see also Desert Palace, Inc. v. Costa,* 539 U.S. 90, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *Morrow v. Tennessee*, 588 F. App'x 415, 421 (6th Cir. 2014) ("[E]ven though the State may not have shown direct evidence of intent, circumstantial evidence is enough."); *Britt v. Howes*, 404 F. App'x 954, 956-57 (6th Cir. 2010) ("'[C]ircumstantial evidence alone is sufficient to sustain a conviction . . . .'"). Persons convicted of physical or sexual abuse of babies or infants routinely point to the circumstantial nature of the evidence when challenging its sufficiency; the argument routinely fails. *See United States v. Deuman*, 568 F. App'x 414, 419 (6th Cir. 2014) (where the defendant contended proof of causation was insufficient because it was circumstantial, court upheld conviction of first-degree murder caused by aggravated sexual abuse of three-month-old girl, stating: "Circumstantial evidence alone can sustain a guilty verdict."); *Woodard v. Curtin*, No. 13-cv-15120, 2014 WL 5847588, at *12 (E.D. Mich. Nov. 12, 2014) (where the petitioner, found guilty of first-degree child abuse and manslaughter of two-year-old boy, contended proof of intent was wholly circumstantial and permitted inference of intentional or accidental harm, court denied habeas relief stating: "'[C]ircumstantial evidence is intrinsically as probative as direct evidence even where the conviction rests solely upon circumstantial evidence.'"); *League v. Lafler*, No. 05-74926, 2008 WL 2705499, at *21 (E.D. Mich. Jul. 10, 2008) (where the petitioner, found guilty of first-degree child abuse and felony-murder of two-year-old girl, challenged the sufficiency of the circumstantial proof of intent consisting only of evidence regarding the nature of the injuries, court denied habeas relief stating: "[Intent] may be inferred from the circumstances of the death."); *Mobley v. Stovall*, No. 05-CV-74707, 2007 WL 772922, at *4 (E.D. Mich. Mar. 12, 2007) (where

the petitioner, found guilty of felony-murder based on incident of child abuse against 4-year-old boy, the court denied habeas relief over challenge to sufficiency even though the only proof of intent was circumstantial based on the nature of the injuries); *Church v. Pitcher*, No. 1:02-cv-231, 2006 WL 581007, at *4 (W.D. Mich. Mar. 7, 2006) (where the petitioner, convicted of second-degree murder based on an incident of child abuse against a six-month-old boy, argued that proof of causation and intent was insufficient because it was circumstantial, court affirmed the denial of habeas relief).

The court of appeals' conclusion that evidence can be sufficient to support Petitioner's convictions even though it is wholly circumstantial and based principally on the nature of the victim's injuries, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law.  The evidence, though circumstantial, viewed in a light most favorable to the prosecution, was sufficient to support the jury's verdict with respect to causation and intent.  Petitioner is not entitled to habeas relief on his sufficiency-of-the-evidence challenge.

    IV.    <u>Expert Testimony Invading the Province of the Jury</u>

Petitioner next complains that his trial was rendered fundamentally unfair by the improper introduction of expert testimony on the ultimate issues before the jury.  Petitioner contends that the experts testified that the infant had died of child abuse at Petitioner's hands.  The Michigan Court of Appeals disagreed with Petitioner's characterization of the experts' testimony:

> Next, defendant argues that expert witness testimony improperly invaded the province of the jury.  Specifically, defendant argues that the experts rendered opinions determining that he was guilty of the charged offenses.  We disagree.  We review this unpreserved issue for plain error. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).  Under the plain error standard, defendant bears the burden of showing: "(1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*.  Defendant also contends that trial counsel was ineffective for failing to object to the experts' conclusions.  Because we conclude that no impropriety occurred, we need not consider

10

> defendant's ineffective assistance argument. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).
>
> Under MRE 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." It is likewise not objectionable because "the ultimate determination of guilt or innocence may well turn on whether that expert opinion is believed or disbelieved." *People v Robinson*, 417 Mich 231, 234-235; 331 NW2d 226 (1983). Rather, an expert witness may not opine outright whether the defendant is guilty or not guilty of the charged offense. *See People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), amended in part on other grounds 450 Mich 1212 (1995). The experts here did not do so; opinions that the victim's injuries were consistent with child abuse and inconsistent with a mere fall are not opinions that defendant committed any particular crime. Opinions that the victim's death constituted a medical "homicide" and that the victim had levels of alcohol and THC in her body sufficient to impair an adult driver also do not constitute opinions that defendant committed a crime. Simply because the expert testimony may have influenced the jury's decision of guilt or innocence did not make the testimony improper. *Robinson*, 417 Mich at 234-235. Defendant thus has not shown plain error in the admission of the expert testimony. *Jones*, 468 Mich at 355.

(Mich. Ct. App. Op., ECF No. 9-9, PageID.979-980.) Thus, the court of appeals determined, as a matter of fact, that the experts did not, as Petitioner contends, testify that Petitioner had committed child abuse. The appellate court's factual determination is presumed correct. Petitioner has offered no evidence, much less clear and convincing evidence, to rebut that presumption.

Moreover, the extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be

11

ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard. His argument does not identify any Supreme Court authority that calls into question the constitutional admissibility of the expert testimony offered here.

Interpreting the Federal Rules of Evidence, the Supreme Court has ruled the other way on this issue. In *United States v. Johnson*, 319 U.S. 503 (1943), the Supreme Court considered the admissibility of expert testimony that was challenged because it "invaded the jury's province." *Id*. at 519. The court was not troubled by the fact that the expert testified regarding ultimate issues:

> No issue was withdrawn from the jury. The correctness or credibility of no materials underlying the expert's answers was even remotely foreclosed by the expert's testimony or withdrawn from proper independent determination by the jury. The judge's charge was so clear and correct that no objection was made, though, of course, there were exceptions to the refusal to grant the usual requests for charges that were either redundant or unduly particularized items of testimony. The worth of our jury system is constantly and properly extolled, but an argument such as that which we are rejecting tacitly assumes that juries are too stupid to see the drift of evidence. The jury in this case could not possibly have been misled into the notion that they must accept the calculations of the government expert any more than that they were bound by the calculations made by the defense's expert based on the defendants' assumptions of the case. So long as proper guidance by a trial court leaves the jury free to exercise its untrammeled judgment upon the worth and weight of testimony, and nothing is done to impair its freedom to bring in its verdict

and not someone else's, we ought not be too finicky or fearful in allowing some
discretion to trial judges in the conduct of a trial and in the appropriate submission
of evidence within the general framework of familiar exclusionary rules.

*Johnson*, 319 U.S. at 519-20.

Federal Rule of Evidence expressly states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. Rule Evid. 704(a). The parallel Michigan Rule of Evidence is virtually identical. Mich. Rule Evid. 704. Federal Rule of Evidence 704 was passed for the express purpose of abolishing case law that opined witnesses could not express opinions on ultimate issues. Advisory Committee Notes, Fed. Rule Evid. 704. In *United States v. Scheffer*, 523 U.S. 303 (1998), in a concurring opinion, Justice Kennedy quoted the Advisory Committee Notes to explain the change:

> The older cases often contained strictures against allowing witnesses to express opinions upon ultimate issues, as a particular aspect of the rule against opinions. The rule was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information. 7 Wigmore §§ 1920, 1921; McCormick § 12. The basis usually assigned for the rule, to prevent the witness from "usurping the province of the jury," is aptly characterized as "empty rhetoric." 7 Wigmore § 1920, p. 17.

*Scheffer*, 523 U.S. at 319. That does not leave the permissible scope of expert opinion testimony without bound. Federal Rule of Evidence 702—and the parallel Michigan rule—require that the opinion testimony help or assist "the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. Rule Evid. 702; Mich. Rule Evid. 702. Expert opinions that "merely tell the jury what result to reach" would be inadmissible under Rule 702. Advisory Committee Notes, Fed. Rule Evid. 704. The Michigan Court of Appeals' analysis makes clear that the expert testimony at issue here did not tell the jury what result to reach.

If, indeed, the experts here had opined as to Petitioner's guilt, there is some authority that such opinion testimony would render a trial fundamentally unfair and violate due process. *See, e.g., Cooper v. Sowders*, 837 F.2d 284, 287-88 (6th Cir. 1988). However, *Cooper*

13

was decided before enactment of the AEDPA.  It expressly relies upon: (1) state court authorities, rather than federal law as clearly established by the Supreme Court; and (2) the cumulation of error, a practice the Supreme Court has never held would support habeas relief.  *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) ("The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief.").  The continuing vitality of *Cooper* after enactment of the AEDPA is questionable.  Since enactment of the AEDPA, courts often distinguish the *Cooper* decision.  *See, e.g., United States v. Cobb*, 397 F. App'x 128 (6th Cir. 2010); *Arnold v. Palmer*, No. 1:11-cv-840, 2016 WL 4442810 (W.D. Mich. Jul. 25, 2016); *Sanford v. Smith*, No. 2:11-cv-10748, 2013 WL 5913948 (E.D. Mich. Oct. 24, 2013); *Dorsey v. Banks*, 749 F. Supp. 2d 715 (S.D. Ohio 2010).  Whatever persuasive force *Cooper* retains, it is not clearly established Supreme Court precedent and, thus, cannot form the basis for habeas relief.

For the reasons set forth above, Petitioner has failed to demonstrate that the Michigan Court of Appeals' factual determinations are unreasonable on this record.  Moreover, he has failed to establish that the appellate court's determination—that admission of the expert testimony was permissible—is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on the expert testimony issue.

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must

"engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:  November 19, 2018              /s/ Ray Kent
                                       United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).